Filed 1/17/24  P. v. Jaime CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER JAIME,<br><br>　　Defendant and Appellant. | 2d Crim. No. B324742<br>(Super. Ct. No. 1362689)<br>(Santa Barbara County) |

　　Christopher Jaime appeals the summary denial of his petition for resentencing under former Penal Code[1] section 1170.95 (now section 1172.6).  Jaime contends, and the People correctly concede, that his petition sets forth a prima facie case because the record of his conviction does not demonstrate he is ineligible for resentencing relief as a matter of law.  Accordingly, we shall reverse and remand for the issuance of an order to show cause followed by an evidentiary hearing.

---

　　[1] Unless otherwise noted, all statutory references are to the Penal Code.

**FACTS AND PROCEDURAL HISTORY**

In 2013, Jaime and codefendants Roberto Castaneda and Gregory Wallace were convicted of first-degree murder (§ 187, subd. (a)) with true findings on allegations that the murder was gang-related (§ 186.22, subd. (b)(1)) and that a principal's discharge of a firearm caused the victim's death (§§ 12022.7, 12022.53, subds. (d) & (e)). He was also convicted of possession of a controlled substance (Health & Saf. Code § 11378.) The trial court sentenced Jaime to an aggregate state-prison term of 50 years to life plus 6 years.

In our original opinion on direct appeal, we affirmed the judgments but ordered that the sentences of Jaime and Castaneda, who were both 16 years old when the crime was committed, be modified to reflect they were each entitled to parole hearings during their 25th year of incarceration as provided in section 3051, subdivision (b). (*People v. Castaneda* (Aug. 19, 2015, B249571 [nonpub. opn.].) The facts at trial, as set forth in our opinion, reflect that Jaime was not the actual killer.[2] The record of his conviction also reflects the prosecution argued Jaime could be convicted of first degree felony murder even if he did not intend to kill if the killing was a natural and probable consequence of a robbery. The jury was instructed on theories of natural and probable consequences murder (former CALCRIM No. 403), first-degree premeditated murder (CALCRIM No. 521), first-degree felony murder (former CALCRIM No. 540B), and

---

[2] We previously granted Jaime's request for judicial notice of the record of the clerk's and reporter's transcripts in his underlying appeal. We do not provide a detailed recitation of the underlying facts because they are unnecessary to our decision.

2

conspiracy.[3] The jury's verdict forms do not indicate the theory upon which Jaime was convicted of first degree murder

Following remand from our Supreme Court, we again affirmed but remanded for the trial court to determine whether Castaneda and Jaime were afforded a sufficient opportunity to make a record of information that would be relevant at further parole eligibility hearings, as set forth in *People v. Franklin* (2016) 63 Cal.4th 261. (*People v. Castaneda* (Dec. 5, 2016, B249571) [nonpub. opn.] (*Castaneda II*).)

Shortly before our opinion in *Castaneda II* was filed our electorate enacted Proposition 57, which altered the procedures for trying juveniles in adult court. We granted Jaime and Castaneda's petitions for rehearing and deferred the matter pending our Supreme Court's decision in *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, in which the court subsequently held that Proposition 57 applied retroactively to nonfinal judgments. In accordance with *Lara*, we conditionally reversed the judgments against Jaime and Castaneda and remanded for the

---

[3] The jury was instructed pursuant to former CALCRIM No. 540B that Jaime "may be guilty of first degree murder, under a theory of felony murder, even if another person . . . did the act that resulted in the death" if he (1) "aided and abetted robbery or attempted robbery, or was a member of a conspiracy to commit a robbery;" (2) "intended to aid and abet the perpetrator in committing robbery or attempted robbery, or intended that one or more members of the conspiracy commit robbery;" (3) either he or the perpetrator with whom he conspired committed or attempted to commit robbery; and (4) "[w]hile committing or attempting to commit robbery, the perpetrator caused the death of another person." The instruction further stated that "[a] person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent."

trial court to hold juvenile fitness hearings as to both of them. We also ordered the court to exercise its newfound discretion whether to strike the firearm enhancements if it ultimately found Jaime and Castaneda properly tried in adult court. (*People v. Castaneda* (Jul. 26, 2018, B249571) [nonpub. opn.] (*Castaneda III*).)

In all other respects, we affirmed the judgments. Among other things, we rejected Jaime and Castaneda's claim that the jury was misinstructed on the theory they could be convicted of first-degree murder under the natural and probable consequences doctrine, as provided in *People v. Chiu* (2014) 59 Cal.4th 155. We noted the instructions provided that if the jury found Jaime and Castaneda guilty of murder on the natural and probable consequences theory, it could not convict them of *first-degree* murder unless it also found they acted with malice, i.e., an intent to kill with premeditation and deliberation. We stated: "As these instructions make clear, appellants could be found guilty of first degree murder only if they intended to kill [the victim] and acted with premeditation. The jury thus convicted them under direct aiding and abetting principles, a theory that is still valid. [Citation.]" (*Castaneda III*, *supra*, B249571.)

Following our decision in *Castaneda III*, Jaime stipulated to his transfer to adult court. The trial court reduced his conviction to second-degree murder pursuant to section 1170, subdivision (d), sentenced him to 15 years to life in state prison, struck punishment for the section 12022.53 enhancement and dismissed the drug charges and related enhancements.

In 2022, Jaime petitioned for resentencing under section 1170.95 (now section 1172.6). The petition alleged (1) an information was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the

4

natural and probable consequences doctrine, or other now-prohibited theory of imputed malice; (2) he was convicted of murder or accepted a plea in lieu of a trial at which he could have been convicted of murder; and (3) he "could not presently be convicted of murder . . . because of changes made to [sections] 188 and 189, effective January 1, 2019." The trial court appointed counsel to represent Jaime.

In opposing the petition, the prosecutor argued that the record of conviction, in particular the aforementioned statements in our opinion in *Castaneda III* (*ante*, p. 4) demonstrates he is not entitled to relief as a matter of law. In response to Jaime's reply brief pointing out that an appellate opinion could be considered only for its procedural history (see, e.g., *People v. Flores* (2022) 76 Cal.App.5th 974, 988), the prosecutor filed a supplemental opposition asserting that the law of the case doctrine compelled the trial court to follow our statement in *Castaneda III*. The trial court summarily denied the petition, noting that although the jury had been instructed on a theory of natural and probable consequences, it was bound by our statements in *Castaneda III* that established as a matter of law that Jaime was convicted as a direct aider and abettor.

## DISCUSSION

Appellant contends the trial court erred in summarily denying his petition for resentencing because his petition and the record of his conviction set forth a prima facie case for relief. The People correctly concede the issue.

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to

5

kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); see § 189, subd. (e); accord, *People v. Strong* (2022) 13 Cal.5th 698, 707-708.)  SB 1437 eliminated the natural and probable consequences doctrine by adding section 188, subdivision (a)(3), which requires a principal to act with malice aforethought in order to be convicted of murder.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)  The bill added section 189, subdivision (e), which states:  "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2."  (§ 189, subd. (e); accord, *Gentile,* at p. 842.)

SB 1437 also added section 1172.6 (former § 1170.95) to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile, supra*, 10 Cal.5th at p. 843.)  This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1172.6, subd. (a).)

Individuals seeking such relief must file a petition alleging that "(1) A complaint, information, or indictment was filed

6

against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and] [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)-(3); see also § 1172.6, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

If the defendant has filed a facially sufficient petition, counsel must be appointed if requested and the court shall obtain briefing from the petitioner's counsel and the prosecution. (§ 1172.6, subd. (b)(3); *Lewis, supra,* 11 Cal.5th at p. 966.) The court must then determine whether the petitioner has made a prima facie showing of entitlement to relief. (§ 1172.6, subds. (a)-(c); accord, *Lewis,* at pp. 961-963, 966-967; see also *People v. Strong, supra,* 13 Cal.5th at p. 708.) In making the prima facie determination, the court may rely on "'the record [of conviction], including [its] own documents, "contain[ing] facts refuting the allegations made in the petition."'" (*Lewis,* at pp. 970-971, 972.) Our Supreme Court has recognized that although appellate opinions "are generally considered to be part of the record of conviction[,] . . . the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.]" (*Id.* at p. 972.) Accordingly, an appellate opinion should generally only be

7

considered in this context for its procedural history.  (See §1172.6, subd. (d)(3)[4].)  Such a limitation is necessary because "[i]t's easy to conceive of a case where the issues on appeal implicate different facts than a later resentencing petition." (*People v. Clements* (2022) 75 Cal.App.5th 276, 292.)

If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction.  (§ 1172.6, subds. (c), (d)(1).)  At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)

As Jaime notes and the People concede, Jaime set forth a prima facie case for relief because the record of his conviction plainly and unequivocally demonstrates he was prosecuted on a now-invalid theory of first-degree felony murder, the verdicts do not indicate the theory upon which he was convicted, and no facts in the record of conviction establish as a matter of law that he was not convicted on this improper theory.  The trial court instead relied upon on our statement in *Castaneda III* that Jaime was convicted as a direct aider and abettor. In the current context, this statement is misleading  We made that statement while explaining that the jury was not misinstructed on first-degree natural and probable consequences murder because the instructions made clear that natural and probable consequences

---

[4] Sec. 1172.6, subd (d)(3) provides that at an evidentiary hearing the sentencing court may consider a prior appellate opinion for its procedural history.

murder was only first-degree murder if the defendant intended to kill and acted with premeditation and deliberation.

Our discussion and conclusion on this point did not contemplate, however, that the jury was also instructed on the theory of first-degree felony murder, which did *not* require a finding of malice aforethought or even an intent to kill. To be clear we instead should have stated that "As these instructions make clear, appellants could be found guilty of first degree murder *under the natural and probably consequences doctrine* only if they intended to kill [the victim] and acted with premeditation. *Thus if* the jury convicted them under this doctrine *they were convicted under* direct aiding and abetting principles, *which are* still valid."

*Castenada III* did not establish, as a matter of law, that Jaime was actually convicted under direct aiding and abetting principles.

Moreover, the law of the case doctrine has no application here. In resolving Jaime's claim that the jury was instructed on an invalid theory of first-degree natural and probable consequences murder, we merely had to decide whether the instructions allowed the jury to convict him on that invalid theory, not whether the jury actually convicted him on that theory. It is well-settled that "'discussion or determination of a point not necessary to the disposition of a question that is decisive of the appeal is generally recorded as obiter dictum and not as the law of the case.' [Citation.]" (*Gyerman v. United States Lines Co.* (1972) 7 Cal.3d 488, 498.) Because the record of Jaime's conviction demonstrates he may have been convicted on a now-invalid theory of first-degree felony murder and the statements to the contrary in our appellate opinion are dicta, the

9

court should not have summarily denied his petition for resentencing.

Finally, the trial court's reliance on our statement in *Casteneda III* was not harmless because but for the error Jaime would have been entitled to an evidentiary hearing. (*People v. Flores*, *supra*, 76 Cal.App.5th at p. 986 ["To demonstrate prejudice from the denial of a section [1172.6] petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing."].)

## DISPOSITION

The order summarily denying Jaime's petition for resentencing under section 1172.6 is reversed. The matter is remanded for the trial court to issue an order to show cause and hold an evidentiary hearing in accordance with section 1172.6, subdivision (d).

NOT TO BE PUBLISHED.

CODY, J.

We concur:

GILBERT, P. J.

YEGAN, J.

10

YEGAN, J., CONCURRING:

This is another instance where the majority attempt to achieve perfect justice as viewed by the Legislature and the Supreme Court. This case is going "nowhere" in the Superior Court on reversal. Appellant, a documented and active member of a street gang, was originally convicted of murder with a firearm allegation and sentenced to prison for 50 years to life. Prior to this appeal, he has managed to "whittle down" his sentence to fifteen years to life.

Now he seeks a further reduction and the majority breathe life into his endeavor. Ok, what did he do? He factually conspired with and accompanied five other gang members to execute a drug dealer who had the audacity to not pay tax to the gang for selling drugs in the gang's claimed territory. Appellant carried the firearms to the scene of the crime and pointed out the drug seller to his cohorts. They used the shotguns to murder the drug dealer. We affirmed his conviction. Even if there were instructional error, the legal fact remains that appellant can be convicted under a presently valid murder theory. (Pen. Code, § 1172.6, subd. (3).) As a matter of law, appellant can be convicted of being a direct aider and abetter of murder. Given the historical facts, how could he not? This is harmless error. But, I must concur for the reasons stated in *People v. Arreguin* (2023) 89 Cal.App.5th 58, 63-64.

And, when appellant loses in the Superior Court, there will be yet another appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

John F. McGregor, Judge
Superior Court County of Santa Barbara
_____

Spolin Law, Aaron Spolin, Jeremy M. Cutcher, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.